Kathryn REINHOLD, Plaintiff,

v.

COMMONWEALTH OF VIRGINIA, et al., Defendants.

Civil Action Number 3:96CV82.

United States District Court, E.D. Virginia, Richmond Division.

Dec. 13, 1996.

Harris Dewey Butler, III, William James Pantele, Butler, Macon, Williams, Pantele & Lowndes, P.C., Richmond, VA, Thomas L. Kemp, Kemp & Kemp, Elkton, MD, for Plaintiff.

Neil Anthony Gordon McPhie, Guy Winston Horsley, Jr., Office of the Attorney General, Richmond, VA, for Defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on defendants' renewed motion for judgment as a matter of law pursuant to FED.R.CIV.P. 50(b). For the reasons stated below, the motion is DENIED.

### I.

Plaintiff, Kathryn Reinhold, filed this action against the Commonwealth of Virginia and the Virginia School for the Deaf and

Blind alleging hostile work environment sexual harassment, *quid pro quo* sexual harassment, and retaliation. The case was tried to a jury on October 28–29, 1996. The jury returned a verdict in favor of the Ms. Reinhold on the hostile work environment and *quid pro quo* sexual harassment claims. They found in favor of the defendants on the retaliation claim. Ms. Reinhold was awarded $85,000 in compensatory damages.

During the 1990–91 and 1991–92 school years, Ms. Reinhold was employed as a psychologist for defendant Virginia School for the Deaf and Blind. She was one of a group of multi-disciplinary specialists who provided testing, diagnostic and therapy services to the students. Plaintiff's immediate supervisor at the School was Dennis Martin, the School's audiologist.

In July of 1991, Martin began making unwanted sexual advances toward Reinhold. For example, he visited Reinhold in her office and recited a poem about masturbation. One week later, Martin told Reinhold that he was in love with her. Reinhold told him that she was not interested in a romantic relationship. In August, Martin gave Reinhold a pill bottle filled with sexually explicit messages like "let's do it" and "take off all of your clothes and invite me in."

In October, Reinhold was absent from work due to illness. Martin issued a "Pink Slip" threatening her with "2 days suspended pay and 20 additional psychological evaluations to be completed in two weeks." The "Pink Slip" included the following warning: "[t]his a written warning of intolerance for the displayed actions. Next time you're fired!!!! Well no, I can't do that. Anyway, I'll find some means for making your life hell!!! By the way, I love you."

In November 1991, Martin gave Reinhold a collection of his poems. The collection was entitled "Rein's Hold: A Story of the Heart." The poems contained numerous sexual references such as "baptize me with your body fluids," "the moon shines down on the nudeness of your ivory complexion while I smile over you," and "perhaps my worst addiction is over loving you." After receiving the poems, Reinhold asked Martin to stop and threatened to report him. During this en-counter, Martin grabbed Reinhold around the neck and tried to kiss her.

After this incident, Reinhold states that Martin began giving her extra work assignments. According to Reinhold, he also scheduled private "work-related" meetings with her. These meetings were a pretext for further harassment. In addition, she claims that he called her at home, embarrassed her in front of co-workers, and deprived her of an opportunity to attend a professional seminar. The last major incident occurred in February 1992. Martin invited Reinhold to Paris and mortgaged his home to buy the tickets.

Plaintiff reported Mr. Martin on March 9, 1992. The School suspended Martin immediately. It investigated and concluded that Martin had harassed Reinhold. Martin was given a disciplinary notice, stripped of his supervisory authority and referred to mandatory counseling.

In the midst of these events, Reinhold took several days off to recover from the trauma. While Reinhold was on leave, the School allowed Martin to write a memorandum on School stationery. In the letter, Martin apologized for the disruption caused by his suspension but insinuated that he was the real "victim." Martin repeatedly denied that any of the incidents had taken place and he began to vilify Reinhold to other employees. She claims that her co-workers continued to harass her when she returned and would not allow her to meet with several students. After working five days, Ms. Reinhold resigned.

Evidence at trial revealed that Ms. Reinhold has suffered considerable damages because of Martin's harassment. In part due to licensing differences in the state of Maryland, Ms. Reinhold has not obtained full-time employment since leaving the School. After leaving her job at the School, Ms. Reinhold sold her home at a considerable financial loss and moved out of state. Shortly after moving, Ms. Reinhold began seeing a therapist. She was diagnosed with post-traumatic stress disorder and she has been receiving treatment for this illness for the past four years.

## II.

■ The Court may grant a Rule 50(b) motion where "there is no legally sufficient

evidentiary basis for a reasonable jury to have found for [the prevailing party] with respect to that issue." FED.R.CIV.P. 50(a); *see also Godfrey v. Boddie–Noell Enterprises, Inc.*, 843 F.Supp. 114, 119 (E.D.Va.1994). In making this determination, the Court must view the evidence in the light most favorable to the successful party and give the successful party the benefit of all inferences which the evidence fairly supports. *Ryan v. Edwards*, 592 F.2d 756 (4th Cir.1979); *Godfrey*, 843 F.Supp. at 119 (citations omitted). However, a renewed motion for judgment as a matter of law is not an occasion for the Court to usurp the jury's authority to weigh the evidence and gauge the credibility of witnesses. *Houck & Sons, Inc. v. Transylvania County*, 852 F.Supp. 442, 446 (W.D.N.C.1993) (citing *Taylor v. Home Insurance Company*, 777 F.2d 849, 854 (4th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986)).

### III.

### A. Hostile Work Environment Harassment Claim

Defendants argue that the jury was required to return a verdict in their favor on the hostile work environment harassment claim. To succeed on this claim, plaintiff was required to prove the following four elements by a preponderance of the evidence:

1. The conduct was unwelcome.

2. The conduct was based on the plaintiff's sex.

3. The conduct was sufficiently severe or pervasive to alter the plaintiff's conditions of employment.

4. The conduct was imputable, on some factual basis, to the employer. In other words, if the Plaintiff was subjected to sexual harassment, then the fact finder must determine whether the School, upon learning that Plaintiff was subjected to harassment, took reasonable remedial action to correct the situation.

*See Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126 (4th Cir.1995); 29 CFR § 1604.11.

Defendants concede that Ms. Reinhold was subjected to sexual harassment. However, they insist that plaintiff did not satisfy the fourth element because the School's response to the harassment was reasonable as a matter of law. In particular, once notified of the harassment, defendants investigated the matter, suspended Mr. Martin, stripped him of his supervisory authority, and relocated Ms. Reinhold so that she would no longer have daily contact with Mr. Martin.

Nevertheless, whether action is "reasonably calculated to end harassment" is a question for the finder of fact. *Amirmokri v. Baltimore Gas & Elec. Co*, 60 F.3d 1126, 1131 (4th Cir.1995); *Paroline v. Unisys Corp.*, 879 F.2d 100, 106 (4th Cir.1989), *modified on other grounds*, 900 F.2d 27 (4th Cir. 1990) (en banc). For example, in *Paroline* an employee sued Unisys Corporation alleging hostile work environment sexual harassment. The employer's response was remarkably similar to the response here. It conducted a formal investigation, disciplined the alleged harasser, delayed his promotion and forced him to seek counseling. However, given the extent of the harassment and management's actions following the incident, the Fourth Circuit concluded that "a reasonable finder of fact could infer that Unisys intended Moore's earlier reprimand as nothing more than a slap on the wrist or perhaps even an outright sham." *Id.* at 107.

In this case, the jury could have reasonably reach the same conclusion. Mr. Martin had been harassing Ms. Reinhold for nearly eight months. The investigation of Reinhold's charges was superficial and inadequately designed. The School spent several weeks investigating and preparing a lengthy report on Reinhold's accusations. School officials interviewed several teachers and staff members. Yet, they never asked a single question about sexual harassment. Under the School's own policies, Martin should have been fired. Instead, defendants suspended Mr. Martin with pay and stripped him of his supervisory authority. Finally, the school allowed Mr. Martin to circulate a letter, on School stationery, which inferred that Martin was the real victim. Based on this evidence,

the jury could have reasonably returned a verdict for the plaintiff.

## B. *Quid Pro Quo* Sexual Harassment

██ To succeed on the *quid pro quo* harassment claim, plaintiff had to prove the following elements by a preponderance of the evidence:

1. She was subject to unwelcome sexual harassment.

2. The harassment she complained of was based on sex.

3. Her reaction to the harassment affected tangible aspects of her compensation, terms, conditions or privileges of employment.

4. The employer knew or should have known of the harassment and took no effective remedial action. This element is automatically satisfied when a supervisor engages in *quid pro quo* harassment.

*Spencer v. General Electric Co.*, 894 F.2d 651, 658 (4th Cir.1990). Defendants insist that plaintiff did not present adequate evidence of the third and fourth elements.

██ A plaintiff need not show economic harm to establish that she has suffered a "tangible job detriment." "[T]he language of Title VII is not limited to economic or tangible discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (internal quotations and citations omitted). Courts within the Fourth Circuit have consistently embraced this broad view of the statutory language. *See, e.g., Bowerman v. Industrial Towel Supply, Inc.*, 1996 WL 173139, *4 (W.D.Va., April 19, 1996) (finding sufficient detriment where plaintiff lost job responsibilities and endured unwarranted criticism after rejecting supervisor's advances); *Hott v. VDO Yazaki Corp*, 922 F.Supp. 1114, 1122 (W.D.Va.1996) (denying defendant's summary judgment motion in light of evidence that supervisor denied vacation requests and otherwise disciplined employee who refused to submit to sexual harassment); *Kadiki v.*

*Virginia Commonwealth University*, 892 F.Supp. 746, 752 (E.D.Va.1995) (recognizing a Title IX *quid pro quo* claim where a professor required a student to submit to a spanking in exchange for the opportunity to retake a test).

██ The evidence adduced at trial shows that Martin used his supervisory authority to punish Reinhold after she spurned his sexual advances. Reinhold was hired as the school psychologist. After she refused Martin, he dramatically increased her workload. He instructed her to train teachers, discipline teachers, and lead therapy sessions for various teachers and staff members. In addition, Martin refused to hire a temporary psychologist, as he had done in the past, to help Reinhold complete psychological evaluations required by the State. He also threatened to "make her life hell" and refused to allow her to take part in professional training. This evidence, when considered with the reasonable inferences flowing from it, is sufficient to support the jury's findings.

Plaintiff also presented sufficient evidence of Martin's supervisory authority. Defendants argue that the evidence before the jury was "undisputed" that Martin played no role in hiring Reinhold and did not have authority to fire her. Although this is true, the term "supervisor," as used in this context, is not limited to individuals with unfettered dominance over other workers. A supervisor is an individual who "exercises significant control over hiring, firing, *or conditions of employment.*" *Paroline*, 879 F.2d at 104 (citations omitted, emphasis added). In *Paroline*, the harasser was not the plaintiff's designated supervisor. However, he participated in her interview and gave her work assignments on at least one occasion. The Fourth Circuit held that these facts created a genuine issue of material fact regarding the harasser's supervisory status for Title VII purposes. *Id.* at 104.

This case is far less difficult. Witnesses testified that Martin: (1) supervised the entire diagnostic unit; (2) disciplined other employees; (3) controlled work assignments; (4) led staff meetings; (5) approved leave and

vacation time; and (6) participated in hiring other employees. Finally, plaintiff introduced letters of recommendation from the school principal referring to Martin as a supervisor. As the facts outlined above demonstrate, the jury reached a reasonable decision on the *quid pro quo* claim given the evidence presented.

### C. Damages

■ Defendants argue that plaintiff failed to show by a preponderance of the evidence that she was entitled to compensatory damages. On November 21, 1991, the Civil Rights Act of 1991 took effect. This Act expanded the relief available under Title VII to include the award of compensatory damages. However, the Act has no retroactive effect. *Landgraf v. U.S.I. Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Theard v. Glaxo,* 47 F.3d 676, 679 (4th Cir.1994). Thus, a fact finder may not award compensatory damages for conduct occurring before the November 21, 1991 effective date of the Act. *Amin v. Quad/Graphics, Inc.,* 929 F.Supp. 73 (N.D.N.Y.1996) (no recovery for pre-November 21, 1991 conduct); *Campbell–Carey v. Dalton,* 1995 WL 764572, 1995 U.S.Dist. LEXIS 19215 (E.D.Pa. Dec. 20, 1995) (same).

Martin began harassing Reinhold in August 1991 and continued until March 1992. At trial, Reinhold and several other witnesses testified about the emotional and psychological damages that Ms. Reinhold suffered throughout this period. *See Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336, 354–55 (4th Cir.1994) (although compensatory damages may not be awarded for pre-Act conduct, evidence of such conduct is admissible). Much of the harassment took place after the effective date of the Act. For example, Martin began increasing Reinhold's workload in December 1991. He invited her to Paris in February 1992. Around the same time, he refused to let Reinhold attend a professional meeting after she refused his offer of a romantic weekend. Most importantly, the psychological and emotional effects of Martin's harassment continue to this day. A psychologist testified that Ms. Reinhold suffers from post-traumatic stress syndrome as a result of her experience at the Virginia School for the Deaf and Blind. Before making a diagnosis of post-traumatic stress syndrome, a client must suffer symptoms of the disorder for at least six months. Consequently, the earliest date Reinhold could have been diagnosed with this illness was February 1992. While the testimony on damages was not limited to those damages arising after the effective date of the Act, there was sufficient evidence of post-Act damages to sustain the jury's verdict.

■ Defendant's argument is more properly viewed as an objection to the Court's jury instructions. A damages instruction requiring the jury to limit the issue of compensatory damages to events occurring after the November 21, 1996 effective date would have been proper in this case. *Brinkley–Obu,* 36 F.3d at 355. However, defendants never requested such an instruction nor did they preserve an objection on this issue. Thus, review of the damage award is improper in this context. Federal Rule of Civil Procedure 51 provides, in pertinent part: "No party may assign as error the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." *See also, Trandes Corp. v. Guy F. Atkinson Co.,* 798 F.Supp. 284, 289 (D.Md. 1992) (failure to preserve objection is sufficient grounds to deny motion for judgment not withstanding the verdict).

## IV

The plaintiff presented ample evidence to allow a jury to find in her favor on each issue presented at trial. Accordingly, defendants' renewed motion for judgment as a matter of law is DENIED.

It is so ORDERED.