**Mohamed A. AMIN, Plaintiff,**

v.

**QUAD/GRAPHICS, INC.; Steven R. Kirk; Mark Dutcher; Daren Robarge; Scott Clothier, Defendants.**

No. 94–CV–0952.

United States District Court, N.D. New York.

June 3, 1996.

Andrea T. Vacca, Office of Andrea T. Vacca, Walsh & Walsh Law Offices, Saratoga Springs, New York, for plaintiff.

Bond, Schoeneck & King, LLP (Richard C. Heffern, John E. Higgins, of Counsel), Albany, New York, for defendants.

1. This case has been referred pursuant to 28 U.S.C. § 636(c) and N.D.N.Y.L.R. 73.1.

2. Section 2000e was enacted as Title VII of the Civil Rights Act of 1964, Pub.L. 88–352, 78 Stat. 253 (1964), and remains popularly known as Title VII. *See, e.g., de la Cruz v. New York City*

## MEMORANDUM–DECISION AND ORDER [1]

HOMER, United States Magistrate Judge.

Plaintiff, a former employee of defendant Quad/Graphics, Inc. [hereinafter Quad], alleges that he was discriminated against by the defendants on the basis of his race, religion, national origin and ethnicity beginning in August 1990 and continuing through his last day of work on July 12, 1993. Plaintiff seeks compensatory and punitive damages, and declaratory and injunctive relief under 42 U.S.C. §§ 1981 and 2000e,[2] as well as under the New York Human Rights Law, N.Y.Exec.L. § 296 (McKinney Supp.1996).[3] Presently pending is defendants' motion for summary judgment (Docket No. 24). For the reasons which follow, defendants' motion is granted in part and denied in part.

## I. Background

Plaintiff, currently a citizen of both the United States and Egypt, immigrated to the United States from Egypt in 1985. He is a practicing Muslim. Plaintiff speaks English as a second language but does not consider himself fluent in English. Plaintiff was hired by Quad, a commercial printer of magazines, as a temporary employee on July 24, 1990 and became a regular, full-time employee on or about October 1, 1990. Quad is headquartered in Wisconsin and employs approximately 1,000 workers at its facility in Saratoga Springs, New York. The individually named defendants are all supervisory employees of Quad.

Plaintiff commenced employment with Quad as an operator on the night shift under the direct supervision of defendant Robarge. On April 15, 1992, plaintiff resigned from Quad. However, after meeting with defendant Kirk, plaintiff returned to work at Quad on May 3, 1992 on a day shift. Defendant Dutcher was the Lead Man on that shift and

*Human Resources Administration Dept.,* 82 F.3d 16, 20 (2d Cir.1996).

3. The claims under section 1981 and Title VII are asserted against all defendants. The claim under the New York Human Rights Law is asserted only against the individual defendants.

defendant Clothier was the shift supervisor. Defendant Kirk was the Manager of the Finishing Department throughout plaintiff's employment and was the immediate supervisor of defendants Robarge and Clothier. Plaintiff left work at Quad for the last time on July 12, 1993.

During plaintiff's employment at Quad, co-workers periodically addressed comments to plaintiff about his ethnicity, religion and the like. Plaintiff reported some but not all to his supervisors.[4] These comments included being called a "nigger," "sand nigger" and "camel jockey," and implications and hazing about involvement in the World Trade Center bombing and terrorism. They also included comments by co-workers over a paging system. That system allowed all employees to make announcements through handsets at their work stations over a loudspeaker system. Beginning in May 1992, co-workers utilized the system to imitate plaintiff's accent and for similar purposes.

Plaintiff filed a charge of discrimination with the New York State Division of Human Rights (DHR) on October 7, 1993. This complaint was dismissed by DHR for administrative convenience on August 15, 1994. Plaintiff also filed a written charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) on October 7, 1993. Plaintiff received a "Notice of Right to Sue" from the EEOC on May 3, 1994. This action followed within ninety days of this notice.

## II. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demon-

strate that no genuine issue of material fact exists falls solely on the moving party. *Federal Deposit Ins. Corp. v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994).

The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985). The non-movant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The Second Circuit has stated that caution must be used when determining whether to grant summary judgment in employment discrimination cases:

> ... [E]mployment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence. An employer who discriminates is unlikely to leave a "smoking gun" ... attesting to a discriminatory intent.... A victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence.... Consequently, in a Title VII action, where a defendant's intent and state of mind are placed in issue, summary judgment is ordinarily inappropriate....

---

4. Quad utilized an Employee Services Manual which described a procedure for reporting complaints. Plaintiff acknowledged receiving the manual on at least two occasions but contends he was unfamiliar with its contents.

78

*Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir.1991) (citations omitted); *see also Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

### III. Discussion

The defendants move for summary judgment on the following grounds: (1) all claims against defendants Dutcher, Clothier, Robarge and Kirk, in their individual capacities, must be dismissed as a matter of law; (2) all claims for damages or a jury trial under Title VII and section 1981, as amended, must be dismissed with respect to any alleged acts of discrimination occurring prior to November 21, 1991; (3) all claims under Title VII for acts of discrimination occurring before December 11, 1992 must be dismissed; (4) plaintiff's constructive discharge claims fail to state claims upon which relief may be granted; (5) all claims under Title VII of religious or other types of unlawful discrimination not specifically set forth in plaintiff's administrative charges are not within the jurisdiction of this Court; (6) plaintiff's claims against the defendants for the creation of a hostile work environment under Title VII and section 1981 are legally insufficient; and (7) there is insufficient proof that certain acts of discrimination alleged by plaintiff arose from his race, religion, national origin or ethnicity.

### A. Claims Against Defendants in Their Individual Capacities

#### 1. Title VII

The defendants assert that the individual defendants are not "employers" as defined in 42 U.S.C. § 2000e(b) and are, therefore, not liable in their individual capacities under Title VII for any of the damages allegedly suffered by plaintiff.

Title VII defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person...." 42 U.S.C. § 2000e(b). Courts in the Second Circuit have divided regarding the interpretation of the word "agent". However, the Second Circuit has recently addressed the issue of whether an employer's agent may be held individually liable under Title VII and

has unambiguously held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka v. The Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995). Accordingly, the individual defendants' motion on this ground is granted.

#### 2. 42 U.S.C. § 1981 and the Human Rights Law

The defendants contend that there is no legal or factual basis upon which the individual defendants may be held liable under section 1981 or the Human Rights Law. They assert that the acts complained of fail to establish the necessary discriminatory intent.

To sustain these claims, plaintiff must establish "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts ...)." *Mian v. Donaldson, Lufkin & Jenrette Securities,* 7 F.3d 1085, 1087 (2d Cir.1993). Plaintiff must present some facts which establish that his race was the reason for defendants' actions. *Brown v. City of Oneonta, N.Y.,* 858 F.Supp. 340, 344 (N.D.N.Y.1994) (claims dismissed under section 1981 where complaint failed to allege "facts which establish that defendants' actions were racially motivated and purposefully discriminatory").

Section 1981 and the Human Rights Law apply to discrimination against, among others, employees on the basis of race. *See Adams v. McDougal,* 695 F.2d 104, 108 (5th Cir.1983). Individual supervisors may be found liable for damages under its provisions if personally involved in the discriminatory activity. *See Allen v. Denver Public School Bd.,* 928 F.2d 978, 983 (10th Cir.1991). The element of personal involvement may be satisfied by proof that a supervisor had knowledge of the alleged acts of discrimination and failed to remedy or prevent them. *See Witt v. Roadway Exp.,* 880 F.Supp. 1455, 1465 (D.Kan.1995).

Here, plaintiff has offered evidence that defendants Dutcher and Clothier possessed the requisite knowledge and failed to

act in response. This question of fact as to these two defendants serves to defeat their motion on this ground.

■ The evidence offered by plaintiff as to defendants Kirk and Robarge is materially different, however. That evidence shows that they learned of the alleged discriminatory acts prior to and when plaintiff first resigned on April 15, 1992. Significant steps were taken at that time to remedy those acts. There is no evidence that defendants Kirk or Robarge, unlike the other individual defendants, knew or should have known of the acts alleged by plaintiff occurring after he returned to work on a different shift on May 3, 1992. Accordingly, the motion for summary judgement is granted on this ground as to defendants Kirk and Robarge and they are dismissed as defendants in this action.

### B. Discriminatory Acts Occurring Prior to 1991

■ Prior to the enactment of the Civil Rights Act (CRA) of 1991, Title VII and section 1981 allowed only equitable relief and afforded no jury trial. The CRA, effective November 21, 1991, allowed recovery under these statutes of compensatory and punitive damages and a jury trial if demanded by either party. *See* 42 U.S.C. § 1981a. The acts of discrimination alleged herein straddle the effective date of the CRA of 1991. Defendants now seek summary judgement and dismissal of plaintiff's claims for compensatory and punitive damages, and his demand for a jury trial, as to those allegations occurring prior to November 21, 1991. Plaintiff opposes the motion on the ground that the continuing nature of the alleged discriminatory conduct brings the entire action within the scope of the CRA of 1991.

The Supreme Court has clearly held in companion cases that conduct completed prior to November 21, 1991 is not subject to the provisions of the CRA of 1991 even if the lawsuit is commenced subsequent to that date. *See Landgraf v. USI Film Products,*

511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (Title VII); *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) (section 1981); *see also Vernon v. Cassadaga Valley Cent. School Dist.,* 49 F.3d 886, 890 (2d Cir.1995).

Research has revealed no circuit court cases addressing the issue presented here whether conduct straddling the effective date of the CRA of 1991 is governed in whole or in part by that act. It appears that only the district courts of the Northern District of Illinois have considered this precise issue. Those courts have held that even where alleged discriminatory conduct straddles November 21, 1991, a plaintiff may not recover compensatory or punitive damages or demand a jury trial for the pre-November 21, 1991 conduct. *See Kao v. Sara Lee Corp.,* No. 92 C 7311, 1995 WL 453025, at *3 (N.D.Ill. July 28, 1995), and cases cited therein.

■ *Landgraf* supports this conclusion. The Court there reasoned that where a statutory enactment would increase a party's liability for conduct occurring before its effective date, application of the new enactment to such conduct is disfavored absent clear congressional intent. 511 U.S. at ——–——, 114 S.Ct. at 1505–08. Because no such clear congressional intent was expressed in the CRA of 1991, its provisions cannot be applied to conduct occurring before its effective date. *Id.*[5] Because the jury trial provision, while procedural and not substantive, is conditioned on a demand for compensatory or punitive damages, *see* 42 U.S.C. § 1981a(c), it likewise cannot be applied to conduct occurring before the effective date of the act. *Id.* at ——, 114 S.Ct. at 1505.

■ Creating a right to compensatory and punitive damages and to a jury trial for a period of alleged discriminatory conduct while limiting recovery to equitable relief without a jury trial to an earlier period creates anomalies which pose logistical, proce-

---

**5.** By comparison a criminal offense commenced prior to the effective date of the Sentencing Reform Act of 1984, which authorized creation of the Sentencing Guidelines, and continuing after that date is subject in its entirety to the provisions of that act for purposes of sentencing. *See, e.g., United States v. Story,* 891 F.2d 988, 995–97 (2d Cir.1989) (decision based in part on determination from legislative history that such a holding comported with congressional intent).

dural and legal issues for trial. Nevertheless, in light of the CRA of 1991 and its interpretation by the Supreme Court, defendants' motion for summary judgement on this ground must be granted and plaintiff's claims for compensatory and punitive damages, and for a jury trial, as to alleged discriminatory actions occurring prior to November 21, 1991 are dismissed. As to those actions, plaintiff is limited to the equitable relief, and to a non-jury trial, allowed by Title VII and section 1981 before the CRA of 1991.

### C. Claims Against Quad Occurring Prior to December 11, 1992

Plaintiff filed a charge of discrimination against Quad with the EEOC on October 7, 1993. Defendants now contend that discrimination claims against Quad under Title VII which occurred prior to December 11, 1992 must be dismissed on the ground that such claims are subject to a 300 day limitations period under Title VII.

■ Pursuant to 42 U.S.C. § 2000e–5(e)(1), an EEOC charge must be filed within 180 days after the alleged unlawful employment practice. However, when proceedings have also been instituted in a state agency, such as the New York Human Rights Commission, a charge must be filed within 300 days. *See Patchen v. N.Y. State Dep't of Social Servs.,* No. 91–CV–1435, 1994 WL 495788, at * 5 (N.D.N.Y. Sept. 8, 1994), *aff'd,* 57 F.3d 1064 (2d Cir.1995).

■ Plaintiff asserts that his claim falls under the continuing violation exception to the Title VII limitations period. Pursuant to this exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination, in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *see also Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994); *Patchen v. N.Y. State Dep't of Social Servs.,* 1994 WL 495788 at * 5. However, multiple incidents of discrimination must be the result of a discriminatory policy or mechanism. *Lambert v. Genesee Hosp.,* 10 F.3d at 53. Only compelling circumstances warrant application of this exception to the statute of limitations. *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y.1989).

■ Plaintiff argues that the paging system was a discriminatory mechanism that was utilized to harass plaintiff. Plaintiff offers evidence from which it could be found, for example, that plaintiff was subjected to a continuing series of abusive pages and was directed by a supervisor to make certain humiliating pages; defendants failed to stop incidents of harassment of which they were aware; and defendants failed to discipline co-workers who were committing the harassment. This evidence suffices to create an issue of fact whether there existed a policy of discrimination within the scope of the exception to the Title VII limitations period. Accordingly, defendants' motion on this ground must be denied.

### D. Constructive Discharge Claims

■ As one theory, plaintiff has asserted a claim that defendants' conduct constituted a constructive discharge from his employment at Quad. Such a theory requires proof of two elements. First, the conditions complained of were such that a reasonable person in plaintiff's position would have been compelled to resign. Second, the defendants' conduct in making plaintiff's working conditions so intolerable was deliberate. *Phillips v. General Dynamics Corp.,* 811 F.Supp. 788, 792 (N.D.N.Y.1993). Defendants contend that plaintiff has failed to satisfy either requirement for this claim.

■ Viewing the evidence submitted on this motion in the light most favorable to plaintiff, it suffices to establish conditions which would compel a reasonable person to resign and a question of fact, therefore, exists as to that requirement. Plaintiff's evidence of the deliberateness of defendants' conduct is less clear. However, the Second Circuit has instructed that where, as here, a defendant's intent or state of mind is in issue, summary judgment ordinarily is inappropriate because direct evidence of a defendant's

state of mind is generally unavailable to a plaintiff. *Rosen v. Thornburgh*, 928 F.2d at 533.

Accordingly, because there are issues of material fact concerning plaintiff's constructive discharge claim, defendants' motion for summary judgement is denied.

### E. Administrative Proceedings

The defendants contend that because plaintiff's EEOC administrative charge only alleges national origin and perhaps race discrimination, plaintiff's allegations of religious and ethnic discrimination are barred in this action. In addition, defendants state that many of the claims, such as physical abuse, set forth in plaintiff's second amended complaint were not included in plaintiff's administrative charges.

■■■ A plaintiff may not assert claims in a Title VII lawsuit that were not included in his EEOC charge. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). This policy serves to prevent circumvention of the EEOC's investigatory and conciliatory roles, and to provide defendants with adequate notice of all charges. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989). A claim omitted from an EEOC charge may be raised in a Title VII complaint where such claim is "reasonably related to the allegations and claims in the administrative charge...." *Doyle v. Sentry Ins.*, 877 F.Supp. 1002, 1007 (E.D.Va.1995), *quoting Nicol v. Imagematrix, Inc.*, 767 F.Supp. 744, 753 (E.D.Va.1991).

In response to defendants' motion, plaintiff states that the religious and ethnic discrimination allegations should be allowed to stand because plaintiff was not represented by counsel when he met with a representative of DHR to file his complaints with the DHR and the EEOC. The DHR representative used a four-page statement prepared by the plaintiff and an affidavit signed by the plaintiff to prepare the administrative charge. Plaintiff allegedly signed the charge after it was prepared by the representative relying on the preparer's expertise in drafting the complaint.

The Second Circuit has stated that because EEOC charges are generally filed by pro se parties "not versed in the vagaries of Title VII and its jurisdictional and pleading requirements, [the Court] has taken a 'flexible stance in interpreting Title VII's procedural provisions,' so as not to frustrate Title VII's remedial goals." *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991), *quoting Egelston v. State University College at Geneseo*, 535 F.2d 752, 754–55 (2d Cir.1976).

■■■ Although the DHR-prepared charge does not notify defendants that plaintiff is pressing charges regarding physical assault or religious discrimination per se, those charges are reasonably related to the claims of national origin and race discrimination in this case in light of both plaintiff's pro se status at the time the charges were filed and the nexus between harassment based on national origin and that based on ethnicity or religious belief. EEOC's role has not been circumvented and these additional allegations amplify the charges as asserted in the EEOC claim. For these reasons, defendants' motion for summary judgment on this ground is denied.

### F. Hostile Work Environment Claim

The defendants contend that Quad should not be held liable under a hostile work environment theory for acts that plaintiff never brought to their attention during his employment there.

■■■ To assert a Title VII or section 1981 claim based on a hostile work environment, a claimant must establish that the workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter that work environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). A claimant must also establish that a basis exists for imputing the conduct that created the hostile environment to the employer. *Karibian v. Columbia University*, 14 F.3d 773, 779 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994).

■■■ The common law principles of agency determine whether the conduct of a

supervisor or co-worker should be imputed to the employer. *Murray v. New York University College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995). An employer's liability is absolute when a supervisor asserts the authority designated to him by the employer to further the creation of a hostile work environment. *Karibian v. Columbia University*, 14 F.3d at 779. However, employer liability for a hostile environment created by low level supervisors or co-workers attaches only when the employer has "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 63 (2d Cir.1992); *see also Karibian v. Columbia University*, 14 F.3d at 780.

 Plaintiff argues from the evidence submitted that he was subjected to a hostile work environment in which co-workers, supervisors and managers all were involved. Although plaintiff did not follow the official complaint procedure, he offers evidence that he notified supervisors of many of the alleged incidents of harassment. This evidence creates questions of fact as to defendant Quad's knowledge and response. Defendant Quad's motion for summary judgement on this ground must, therefore, be denied.

### G. Miscellaneous Claims

Finally, defendants seek summary judgement on and dismissal of those claims of discrimination which on their face betray no animus based on race, national origin, religion or ethnicity. Generally, these include allegations of incidents in which plaintiff was called various names by co-workers.

While these alleged incidents do not establish discriminatory intent when viewed in isolation, they must be examined on this motion in context with the other evidence of such intent offered by plaintiff. Viewed in that context and in the light most favorable to plaintiff, those incidents raise issues of fact as to the intent with which the comments were made. Defendants' motion on this ground must, therefore, be denied.

6. Summary judgment is thus granted defendants Kirk and Robarge on all claims and they are

### IV. Conclusion

**WHEREFORE,** for the reasons stated above, it is

**ORDERED** that defendants' motion for summary judgment be **GRANTED** in part as follows:

1. Summary judgment as to defendants Kirk, Dutcher, Robarge and Clothier is granted on the Title VII claim;

2. Summary judgment as to defendants Kirk and Robarge is granted on the Section 1981 and Human Rights Law claims;[6] and

3. Summary judgment is granted all defendants on the Title VII and section 1981 claims as to the demands for compensatory and punitive damages and for a jury trial for all acts of discrimination alleged to have occurred prior to November 21, 1991; and

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **DENIED** in all other respects.

hereby dismissed as defendants in this case.