Brenda HICKS, Plaintiff,

v.

IBM, et al., Defendants.

No. 98 Civ. 5228 (CM).

United States District Court,
S.D. New York.

April 16, 1999.

Sheri M. Hatton, Sussman, Bergstein & Wotorson, Goshen, NY, for Brenda Hicks, plaintiff.

Jay E. Gerber, Davis Weber & Edwards, P.C., New York City, for IBM, defendant.

John Houston Pope, Davis Weber & Edwards, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT RICKER'S MOTION TO DISMISS PLAINTIFF'S CLAIM FOR RELIEF UNDER SECTION 296(6) OF THE NEW YORK STATE EXECUTIVE LAW AND OTHERWISE DENYING THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge.

Plaintiff Brenda Hicks, who is half Native American and half African American, brought this employment discrimination claim against her current employer IBM, and against four employees, for violation of 42 U.S.C. § 1981 and New York's Executive Law §§ 296 and 297. The complaint alleges that the four individual Defendants implemented racially discriminatory job assignments, failed to provide commensurate training, and permitted the existence of a racially oppressive work environment. The individual Defendants have filed this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that neither 42 U.S.C. § 1981 nor the relevant sections of the Executive Law give rise to a claim against an individual as opposed to a contracting party. Defendant IBM has not joined in the motion. For the reasons that follow, the motion is denied.

### Background

The complaint alleges as follows: since 1983, Plaintiff has been an employee of IBM, assigned to the MET laboratory located in East Fishkill, New York. (Cmplt.¶ 9.) During her years at IBM Fishkill, she has received positive reviews and, in 1993, was promoted from Production Operator to Senior Lab Technician. (Cmplt.¶¶ 10, 37.)

In January of 1996, Plaintiff alleges that she began experiencing racial and national origin discrimination. (Cmplt.¶ 11.) Plaintiff contends that Defendant Marty Ricker ("Ricker"), a laboratory engineer and Plaintiff's assigned mentor, made inappropriate remarks regarding Plaintiff's

race and gender and on one occasion pulled her hair. (Cmplt.¶¶ 12–16.) Plaintiff alleges that Ricker made comments about Plaintiff's race such as "send them to school, clean them up and they still belong on the cotton field" and "I'm tired of black people taking taxes." (Cmplt.¶ 12.) Plaintiff also asserts that Ricker, in the presence of Plaintiff, made inappropriate remarks about Blacks on welfare, and that Ricker asked her if her son owned a "boom box," a question that Plaintiff alleges demonstrates his racial stereotyping. (Cmplt.¶¶ 14, 16.) Plaintiff asserts that these remarks incited racial comments from other employees, thereby creating a hostile work environment. (Cmplt.¶ 42.) In late 1996, Plaintiff's entire department was required to attend diversity training (Cmplt.¶ 18), but Plaintiff alleges that the employees' inappropriate remarks continued after the training. (Cmplt.¶ 19, 21.) Plaintiff also alleges that Ricker failed to mentor her because of her race and national origin. (Cmplt.¶ 45.)

Each time a racially offensive incident occurred, Plaintiff notified her lab manager, Defendant George Walker ("Walker"). (Cmplt.¶¶ 17, 22.) Plaintiff alleges that both Ricker and Walker failed to assign her diverse work assignments in comparison to her Caucasian co-employees. (Cmplt.¶ 45.) Further, Plaintiff asserts that Walker failed to take adequate steps to alleviate the harassment. (Cmplt.¶ 28.)

In April of 1998, Plaintiff reported her complaints to Defendant J.J. Sinnott ("Sinnott"), Vice President of Human Resources. (Cmplt.¶ 29.) Sinnott assigned the matter to Defendant Dr. Katherine Frase ("Frase"), another Vice President of Human Resources. (Cmplt.¶ 30.) Plaintiff alleges that Frase failed to make any meaningful investigation and recommendation for corrective action. (Cmplt.¶ 31.) Sinnott established a procedure for Plaintiff to meet with Walker on a weekly basis to report the work that Plaintiff was assigned and whether it had been completed. (Cmplt.¶ 34.) Plaintiff contends that this procedure resulted in micro-management of her work and that Walker threatened her continued employment with IBM. (Cmplt.¶¶ 34, 35.)

Plaintiff subsequently brought this action alleging that IBM and the individual Defendants, Ricker, Walker, Sinnott, and Frase have violated 42 U.S.C. § 1981 and New York Executive Law §§ 296 and 297.

## Discussion

On a motion to dismiss pursuant to FED. R.CIV.P. 12(b)(6), this court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994). The court should grant a motion to dismiss only if, after viewing plaintiff's allegations in a favorable light, it appears beyond doubt that Plaintiff can prove no set of facts in support of her claim. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994).

*Individual Liability under § 1981*

42 U.S.C. § 1981 states:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

(c) The rights protected by this section are protected by impairment by nongovernmental discrimination and impairment under color of state law.

■ Section 1981 was passed under the Civil Rights Act of 1866 to implement the 13th Amendment and to prohibit all discrimination based on race. *See Jett v. Dallas Independent School District,* 491 U.S. 701, 713–714, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). As construed by the courts for many years, § 1981 provided protection only to the process of *making* the employment contract, and therefore did not give rise to claims of racial or ethnic discrimination that occurred *during* the contractual relationship. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). However, the Civil Rights Act of 1991 broadened § 1981 to include performance of the contract as part of the phrase "make and enforce contracts." *See* 42 U.S.C. § 1981(b). Thus, acts of discrimination that occur at any time during the contractual relationship can also give rise to liability under § 1981.

Defendants assert that, by keeping the language "make and enforce contracts," Congress intended that § 1981 apply only to employers, and that individual employees of a corporation, who are not parties to the underlying employment contract, cannot be held liable under § 1981. As both parties concede, the issue of whether § 1981 provides for individual liability has not been clearly resolved and there is no controlling authority in the Second Circuit. Defendants contend, however, that individual liability under § 1981 would be inconsistent with the Court of Appeals' decision in *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995).

In *Tomka,* the court concluded that Title VII of the Civil Rights Act of 1964 did not contemplate imposing liability on individuals employed by an "employer." After analyzing the legislative history of Title VII, the court rationalized that finding individual liability would lead to results that Congress never intended. *See id* at 1314. There is no mention, for example, of agency liability in the floor debates, implying that Congress did not contemplate it under Title VII. *See id.* Further, the court found that Congress could not have meant to create a situation where the plaintiff could settle with the employer and leave the defendant employees to bear the burden of the judgment. *See id.* at 1315.

The Defendants argue that this rationale applies equally to the amendments to § 1981. Defendants assert that Congress could not have intended to expose individuals to liability by adding "performance" under § 1981 when they could not be held liable under Title VII. In effect, Defendants argue that § 1981 is co-extensive with Title VII in the area of employment contracts.

However, in reaching its conclusion that Title VII did not contemplate individual liability, the court in *Tomka* took pains to distinguish § 1981 from Title VII. Title VII, for example, established limitations on damages according to employer size—exempting employers with less than fifteen employees. *See Tomka,* 66 F.3d at 1315. Thus, the court reasoned that if Congress had intended to encompass individual liability under Title VII, it would have included individuals in the calibrations and discontinued the exemption. *See id.* There are no corresponding limitations on damages under a § 1981 claim. *See id.* at 1316. Further, the court recognized that Title VII and § 1981 give rise to distinct causes of action. *See id.* The *Tomka* majority also acknowledged the dissent's note that employer-entities and *their agents* can face unlimited liability under 42 U.S.C. § 1981. *See Tomka,* 66 F.3d at 1316.

The Second Circuit concluded that the "significant differences in the statutory enforcement mechanism, coverage, and remedial provisions of § 1981, as distinguished from Title VII, reveal that the breadth of one statute provides no support for divining the intent of Congress in limiting the coverage of the other." *Id.* at 1317. Thus, the court's analysis of the distinction between Title VII and § 1981 and its affirmation of the "breadth" of the

latter, strongly suggest that individuals can be held liable under § 1981.[1] Several district courts in the Circuit have so held. *See Ayton v. Lenox Hill Hospital,* No. 93 Civ.6601, 1997 WL 10000 *8 (S.D.N.Y. Jan.10, 1997); *Northup v. Connecticut Commision on Human Rights & Opportunities,* No. Civ. 3:97–211, 1998 WL 118145 *3 (D.Conn. Feb.2, 1998); *Amin v. Quad/Graphics, Inc.,* 929 F.Supp. 73, 78 (N.D.N.Y.1996).

Defendants argue that those cases that have permitted individual liability have not considered the anomaly of recognizing individual liability for § 1981 claims and not for Title VII claims. Defendants assert that allowing individual liability under § 1981 is opening a Pandora's box of litigation among co-workers that Congress could not have intended. It appears to this Court, however, that Congress itself opened that Pandora's box when it amended § 1981 in a way that encompassed every aspect of the employment relationship, despite the existence of another perfectly effective remedy (Title VII) to redress racial and ethnic discrimination in the employment context. In effect, Congress removed certain limitations it had written into Title VII for race and ethnicity cases, without amending that statute. As is often the case, litigants and the courts must live with the consequences.

However, individual liability under § 1981 is not without limits. In each of the cases that have allowed individual liability, the individuals have been supervisors who were personally involved in the discriminatory activity. *See Ayton v. Lenox Hill Hospital,* 1997 WL 10000 at *8; *Northup v. Connecticut Commission on Human Rights,* 1998 WL 118145 at *3; *Amin v. Quad/Graphics, Inc.,* 929 F.Supp.

at 78. *See also Richard v. Bell Atlantic Corp.,* 946 F.Supp. 54, 74 (D.C.1996) (holding that officers, directors and employees of corporation may be held personally liable when they intentionally infringe on § 1981 rights); *Leige v. Capitol Chevrolet, Inc.,* 895 F.Supp. 289, 293 (M.D.Ala.1995) (holding individuals with capacity to hire and fire or make recommendations to those decisions are subject to liability). That limitation gives meaning to the statutory "make and enforce" language; those who can be held liable are those who have the authority to act on behalf of an employer in making and enforcing the employer's contracts. To the same effect is the Fifth Circuit's decision in *Bellows v. Amoco Oil Co.,* 118 F.3d 268, 274 (5th Cir.1997). In *Bellows,* the court narrowed the holding of *Faraca v. Clements,* 506 F.2d 956, 959 (5th Cir.1975), where the Director of the Georgia Retardation Center was subject to liability under § 1981 when he decided not to hire the plaintiff because plaintiff was married to an African American woman. The court in *Bellows* stated that the director was personally liable because he and the employer, the State of Georgia, were essentially one and the same. *See Bellows,* 118 F.3d at 274. The director was acting on behalf of the state; his hiring decision was indistinguishable from that of the employer. *See id.* Thus, individuals should be held liable under § 1981 only when they are essentially one and the same with the employer; that is when they have the capacity to make and enforce the contract between the employer and the employee.

Plaintiff alleges that Defendants Ricker and Walker exercised supervisory authority over Plaintiff (Complt.¶ 41), and

---

1. *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), also suggests that individuals can be held liable under § 1981. In *Jett,* the Petitioner brought a § 1981 discrimination action against the school district and against the school principal in his official and personal capacities. *See id.* at 707, 109 S.Ct. 2702. At the trial level, the jury awarded damages against the Principal. *See id.* The District Court set aside the punitive damages award against the principal as unsupported by the evidence, and the Principal subsequently reached a settlement with Petitioner. *See id.* at 708, 109 S.Ct. 2702. The issue of whether the principal could be held individually liable under § 1981 was never specifically addressed.

that Defendants Sinnott and Frase are Principal Agents of the employer, IBM. (Complt.¶¶ 3,4.) The question of whether the individual Defendants have the capacity to make and enforce contracts, thereby subjecting them to potential liability under § 1981, survives Defendants' motion to dismiss.

*Intent to Discriminate*

Defendants also argue for dismissal because Plaintiff fails to allege sufficient facts to establish the required discriminatory intent under § 1981. Defendants assert that Plaintiff makes only broad, conclusory statements of racial discriminatory intent.

■ To establish a claim under § 1981, a Plaintiff must allege sufficient facts to support the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e. make and enforce contracts)." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). When discriminatory intent is in question, courts are cautious of summary adjudication. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). However, conclusory statements of discriminatory intent are not enough to survive a motion to dismiss. *See Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994). Further, a complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination. *See id.* at 714.

■ Defendant Ricker argues that Plaintiff's allegations regarding his comments and actions, albeit insensitive, lack any racial hostility. Defendant Ricker also asserts that Plaintiff's allegations that he treated her differently because she was a woman undermine her § 1981 claim.[2]

■ Defendant is correct that Plaintiff's allegation that "Defendant Ricker pulled her hair and commented that he did not know that it was real" (Complt.¶ 13) and that gender-orientated comments such as "because you are a woman, you cannot do this" (Complt.¶ 12), do not establish the necessary racial discrimination. However, "the real question is whether the complaint alleges facts sufficient to raise an inference of racial motivation." *Williams v. Greendolf, Inc.*, 735 F.Supp. 137, 139 (S.D.N.Y. 1990). In the cases that Defendant Ricker relies on, *no* facts were pleaded to support an inference of racial discrimination. *See Yusuf*, 35 F.3d at 714 (plaintiff offered no reason to suspect that disciplinary panel's action had anything to do with race other than his assertion that panel members were white and he was Bengali); *De Jesus–Keolamphu v. Village of Pelham Manor*, 999 F.Supp. 556, 565 (S.D.N.Y. 1998) (plaintiff alleged no facts that any actions taken were motivated by racial animus). Here, Plaintiff does allege that Ricker made racially motivated comments. Plaintiff alleges that Ricker commented about blacks on welfare in Plaintiff's presence (Complt.¶ 14), and that Ricker made the comments "send them to school, clean them up and they still belong in the cotton field" and "I'm tired of black people taking taxes." (Complt.¶ 12.) These allegations are sufficient to give rise to an inference of discriminatory intent. The motion to dismiss the § 1981 claim against Defendant Ricker is denied.

Defendants Walker, Sinnott and Frase contend that Plaintiff alleges only that they were indifferent to her plight, not that they were purposefully discriminatory because of her race. These Defendants rely on *Karibian v. Columbia University*, 930 F.Supp. 134 (S.D.N.Y.1996), to suggest that such indifference does not establish

---

**2.** § 1981 does not prohibit gender discrimination. *See Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir.1998) (citing *Runyon v. McCray*, 427 U.S. 160, 167, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)).

the required purposeful intent. In *Karibian*, the court held that an employer cannot be held liable, under Title VII and the Human Rights Law, for failure to take investigative or remedial measures in response to a discrimination complaint when it is determined that no discrimination has occurred. *See id.* at 148.

However, Defendants are not the employer and this is not a Title VII claim. In *Amin v. Quad Graphics,* 929 F.Supp. 73, 78 (N.D.N.Y.1996), the court held that individual supervisors could be held liable under § 1981 if they were personally involved in the discriminatory activity. *See id.* at 78. The court held that the "element of personal involvement may be satisfied by proof that a supervisor had knowledge of alleged acts of discrimination and failed to remedy or prevent them." *Id.* Because the plaintiff in *Amin* offered evidence that the defendant supervisors had knowledge of discrimination and failed to act, a question of fact existed and the motion for summary judgment was dismissed. *See id.* at 79.

■ Similarly, Plaintiff alleges that Defendants Walker, Sinnott and Frase were aware of the alleged hostile work environment and failed to take adequate steps to remedy the situation. (Complt.¶¶ 28, 31.) The motion to dismiss the § 1981 claim against these Defendants is denied.

*Individual Liability under New York Executive Law § 296*

Discrimination claims brought under New York's Human Rights Law may be made pursuant to N.Y.Exec.Law § 296(1) or N.Y.Exec.Law § 296(6). *See Bascomb v. Smith Barney, Inc.,* No. 96Civ.8747, 1999 WL 20853 *5 (S.D.N.Y. Jan.15, 1999). Section 296(1)(a) provides that "it shall be

unlawful discriminatory practice for any employer ... to discriminate against such individual in compensation or in terms, conditions or privileges of employment." The New York Court of Appeals has held that "a corporate employee is not subject to individual liability as an employer under the Human Rights Law if he is not shown to have an ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11, 12 (1984).

However, the Second Circuit has also imposed individual liability under its interpretation of N.Y.Exec.Law § 296(6), which states that "it shall be unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y.Exec.Law § 296(6). In *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995), the court distinguished *Patrowich,* and held that individuals may be liable, under § 296(6), even without an ownership interest or the authority to hire and fire, if they actually participated in the discrimination.[3] *See Tomka,* 66 F.3d at 1317. Thus, the court denied a motion to dismiss when the plaintiff alleged that each defendant participated in the discrimination and created a hostile work environment. *See id.*

■ Defendants assert that Plaintiff fails to allege that any of them are employers, as defined by *Patrowich,* to establish a claim of individual liability under § 296(1). Defendants contend that the only allegation Plaintiff makes to support such a claim—that Defendants have the authority to terminate her—is presented in her

---

**3.** The holding of *Tomka* is a subject of controversy among the New York courts. Some courts have adopted the holding. *See Steadman v. Sinclair,* 223 A.D.2d 392, 636 N.Y.S.2d 325 (1st Dept 1996); *Peck v. Sony Music Corp.,* 221 A.D.2d 157, 632 N.Y.S.2d 963 (1st Dept 1995). Other courts have regarded the *Tomka* holding as contrary to the statutory

term "employer" in § 296(1) and the authority of *Patrowich* in defining the term. *See Trovato v. Air Express Int'l,* 238 A.D.2d 333, 655 N.Y.S.2d 656 (2d Dept1997); *Foley v. Mobil Chemical Co.,* 170 Misc.2d 1, 647 N.Y.S.2d 374 (S.C.1996). The New York Court of Appeals has yet to address the issue with a definitive ruling.

brief, rather than the complaint, and cannot be used to defeat the motion to dismiss. *See Benedict v. Amaducci,* No. 92 Civ.5239, 1995 WL 702444 *3 (S.D.N.Y. Nov.28, 1995). However, Plaintiff alleges in her Complaint that Defendants Ricker and Walker are her supervisors and that Defendants Sinnott and Frase are Principal Agents of IBM. These facts, accepted as true, are sufficient to support a claim that they have the authority to terminate her.

Defendants also contend that, to be liable under § 296(6) as aiders and abettors, they must aid and abet the employer's independent acts of discrimination. Because the individual Defendants' conduct forms the basis of IBM's liability, Defendants argue that they cannot be subject to aiding and abetting liability. "It is the employer's participation in the discriminatory practice that serves as the predicate for the imposition of liability on others for aiding and abetting." *Murphy v. ERA United Realty,* 251 A.D.2d 469, 674 N.Y.S.2d 415, 417 (2d Dept. 1998). *See also Bascomb v. Smith Barney,* No.96Civ.8747, 1999 WL 20853 *5 (S.D.N.Y. Jan.15, 1999) (noting that claim may be directed at persons who aid and abet an employer's violation of the statute). *But see McIlwain v. Korbean Int'l Investment Corp.,* 896 F.Supp. 1373, 1383 (S.D.N.Y.1995) (holding that an individual who is employee of corporation can aid, abet, incite a primary violation committed by *another employee* or the business itself) (emphasis added).

At this stage, it is too early to dismiss Plaintiff's aiding and abetting claim against Defendants Walker, Sinnott and Frase. In *DeWitt v. Lieberman,* No. 97 Civ. 4651, 1999 WL 13236 *12 (S.D.N.Y.

Jan.13, 1999) the court held that the plaintiff could not prevail against a co-employee under § 296(6) until she established employer liability and granted the individual defendant's motion for summary judgment. *See id.* The court held that under New York law, an "employer cannot be held liable for an employee's discriminatory act unless the employer became party to it by encouraging, condoning, or approving it." *Id.* Because the plaintiff offered no evidence that the employer encouraged, condoned or approved the individual defendant's actions, the claim against the individual defendant was dismissed. *See id.*

■ Here, Plaintiff alleges that Defendants Walker, Sinnott and Frase, all supervisory personnel, failed to take adequate actions to correct the discrimination, and viewing these allegations in a favorable light, thereby encouraged, condoned or approved Defendant Ricker's conduct. It is axiomatic that a corporation can only act through its employees; therefore, a large corporate employer like IBM can only "encourage, condone, or approve" discrimination by the acts of supervisors like Sinnott and Frase and (arguably) Walker. Thus, it is possible that these individual Defendants may be liable under § 296(6) for aiding the employer's violation in light of *Tomka,* 66 F.3d at 1317.[4] The motion to dismiss the claim against them is denied.

■ Ricker stands in a different place. He is alleged to have committed, and incited other unnamed employees to commit, the very discriminatory acts that are at issue here. I therefore dismiss the § 296(6) claim against him, on the thoery that the primary actor cannot be an aider and abettor of his own actions.

---

4. Defendants also argue that Plaintiff fails to mention in her complaint that the Defendants should be held liable *pursuant to § 296(6),* under aiding and abetting. However, the failure of a complaint to cite a statute (or in this case a subsection of the statute) in no way affects the merits of the claim. *See Albert v. Carovano,* 851 F.2d 561, 571 n. 3 (2d Cir.

1988). Further, as long as facts are alleged that are sufficient to sustain a cause of action under § 296(6), it does not matter that plaintiff did not use words such as aid, abet, or incite, in the complaint. *See McIlwain v. Korbean Int'l Investment Corp.,* 896 F.Supp. 1373, 1382 (S.D.N.Y.1995).

**Conclusion**

The individual Defendants' motion to dismiss Plaintiff's claims under 42 U.S.C. § 1981 and N.Y.Exec.Law § 296 is denied, except that Defendant Ricker's motion to dismiss Plaintiff's claim under § 296(6) is granted.

This constitutes the decision and order of the Court.