**Kalman WEISS, as assignee, et al., Plaintiffs,**

v.

**LA SUISSE, Societe D'Assurances Sur La Vie, a/k/a La Suisse, Lebens-versicherungsgelsellschaft, Lausanne a/k/a/ La Suisse Life Insurance Company, Lausanne, Defendant.**

**No. 97 Civ.1352(CM)(MDF).**

United States District Court, S.D. New York.

Jan. 31, 2001.

Richard M. Mahon, II, Drake, Sommers, Loev & Tarhis & Catania, P.C., Newburg, NY, for Plaintiffs.

Richard N. Chassen, Becker, Glynn, Melamed & Muffly, New York City, for Defendant.

MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND CLAIM, DENYING DEFENDANT'S MOTION TO STRIKE, AND DENYING PLAINTIFFS' REMAINING MOTIONS

McMAHON, District Judge.

This case is presently before the Court on defendant's motion to dismiss the second claim of plaintiffs' amended complaint for discrimination in violation of 42 U.S.C. § 1981, and to strike all allegations of non-payment from the first claim of the amended complaint for breach of contract.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case are described in detail in this court's September 17, 1999 Memorandum Decision and Order granting in part and denying in part defendants' motion to dismiss. *Weiss v. La Suisse*, 69 F.Supp.2d 449 (S.D.N.Y.1999). Briefly, plaintiffs are members of the Orthodox and Hasidic Jewish communities residing in Rockland County and New York City. In 1989 and 1990, defendant La Suisse Life Insurance Company, based in Switzerland and acting through various agents, sold plaintiffs a number of life insurance policies designating plaintiffs' children as the insured and the parents as beneficiaries.

The face amounts of the policies were payable to the beneficiaries in the event the insured either (1) married or died prior to the end of the contract term, or (2) survived to the end of the policy term. In Switzerland, where these types of policies are apparently quite popular, many people either tend to marry late or not at all. In contrast, marriage at an early age is common, in fact almost universal, in Orthodox Jewish communities. Plaintiffs thus apparently anticipated using the policies as an investment to help pay for wedding expenses. This lawsuit began when, after plaintiffs began to bring their claims, the insurance company allegedly stalled, refused to accept proof of marriage from plaintiffs, and avoided payment on the claims. Plaintiffs alleged ten causes of action, among them breach of contract, fraud, RICO, discrimination, and others.

I referred defendant's first motion to dismiss to The Hon. Mark D. Fox, United States Magistrate Judge, who issued a report and recommendation. Subsequently, I:(1) accepted so much of Judge Fox's recommendation as denied defendants' motions to dismiss for improper venue and lack of personal jurisdiction, except that I

ordered that the complaint be dismissed as to La Suisse's parent company, defendant Schweizerische Lebensverischerungsund Rentenanstalt; (2) accepted Judge Fox's recommendation to grant defendants' motion to dismiss the Second, Third, Fourth Fifth, Sixth, Seventh, Eighth and Ninth Causes of Action, although I granted leave to replead the Fourth Cause of Action; (3) did not accept Judge Fox's recommendation that the First Cause of Action be dismissed with leave to replead, as it unquestionably stated a claim for relief. *Id.* at 454.

Plaintiffs' Fourth Cause of Action—the only remaining Federal claim—alleged that defendants discriminated against plaintiffs based upon their racial and ethnic identity by refusing to pay benefits due under the terms and conditions of the insurance policies, in violation of 42 U.S.C. § 1981. I held that this cause of action was flawed because it did not allege circumstances or events from which racial animosity fairly could be inferred. However, I held that "plaintiffs should be permitted to amend their complaint in order to specify the requisite circumstances and events of racial animosity." *Id.* at 460–461.

Plaintiffs filed an amended complaint on June 27, 2000, which alleged the breach of contract claim (the old Fifth Cause of Action) as the First Cause of Action, and the discrimination claim (formerly the Fourth Cause of Action) as the Second. Defendant then moved to: (1) dismiss the Second Cause of Action (the § 1981 claim) of the amended complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (2) strike those allegations of the amended complaint that allege non-payment of policy benefits, failure to reinstate policies, and policy lapses under Rule 12(f) of the Federal Rules of Civil Procedure.

Plaintiffs moved on August 2, 2000 to: (1) convert defendant's motion to one for summary judgment under Rule 56 because matters outside the pleadings are presented in defendant's memorandum of law in support of its motion; and (2) deny defendant's motion based on unresolved and material issues of fact, and direct full discovery.

## CONCLUSIONS OF LAW

*Defendant's motion to dismiss plaintiffs' Section 1981 claim is denied*

■ Plaintiffs claim that La Suisse's delayed payment and refusal to pay out under the policies in violation of Section 1981, which provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981. To establish a claim under § 1981, a plaintiff must allege sufficient facts to support the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race; (3) the discrimination concerned one or more of the activities enumerated in the statute (in this case the making and enforcing of contracts). *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993).

■ I held in my earlier opinion that, as Jews, plaintiffs satisfy the first factor. *See Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 618, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987). Defendant argues that because plaintiffs are members of a well-known *religious* sect, as a self-described "distinctive sub-grouping of orthodox and Chassidic Jewish persons," plaintiffs have failed to allege that they are the kind of group that Congress intended to protect when it passed § 1981. I rejected this argument when I disagreed with Judge Fox's rationale that because plaintiffs' witnesses testified that the policies at issue

were created and marketed specifically for Orthodox and Hasidic Jewish persons, it would be logically inconsistent to allow plaintiffs to argue that coverage was denied out of racial animus. That conclusion is not self-evident. The first factor is therefore satisfied.[1]

■ To satisfy the second element, a plaintiff must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of a racially discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994). In holding previously that plaintiffs had not satisfied this factor, I noted that:

> plaintiffs have alleged only that defendants "discriminated against plaintiffs based upon their ethnic and racial identity" by refusing to pay benefits and interest due or make loans under the policies, intentionally procuring lapses under the policies, failing to accept payment or recognize policy reinstatement provisions as to plaintiffs, and failing to adequately compensate plaintiffs for defendants' failure to comply with the terms of the policy. The complaint neglects to identify any circumstances or events, apart from plaintiffs' bare allegation, that would, directly or indirectly, link the alleged breaches of contract to plaintiffs' racial identity, and, as such, is "too conclusory to survive a motion to dismiss."

*Weiss*, 69 F.Supp.2d at 460 (citations omitted). While I granted plaintiffs an opportunity to amend their complaint, I noted that "while it seems more likely that La Suisse was motivated by the prospect of financial catastrophe arising from so many early marriages than by the ethnic background of the early-to-wed, it is not impossible that plaintiffs can cure the defect in their pleading." *Id.* at 461 n. 5.

Plaintiffs now allege that defendant discriminated against them based upon their ethnic and racial identity as follows: (1) establishing a more burdensome claims procedure for these policies compared to other similar insurance policies marketed by La Suisse during the same time period; (2) by exacting higher interest rates on policy loans compared to other similar insurance policies marketed by La Suisse during the same period; (3) by committing the following acts unique to and targeting this group of policyholders and policies as

1. Defendant argues that the Supreme Court's holdings in *Shaare Tefila* and the companion case of *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), can no longer be sustained under the Equal Protection Clause in light of *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 115 S.Ct. 2097, 2107–08, 132 L.Ed.2d 158 (1995). *Adarand* was an affirmative-action case, in which a construction company claimed that a federal statute's use of race-based criteria to identify "disadvantaged" individuals for professional hiring on government projects violated the equal protection component of the Fifth Amendment's Due Process Clause. The Supreme Court held that all racial classifications are constitutional only if they are narrowly tailored to further a compelling governmental interest. Defendant argues that § 1981 is a "statute intended to benefit minorities," and thus must pass strict-scrutiny. According to defendant, "[e]ven if Congress had benign intentions in 1870 in enacting § 1981, that cannot sustain a racial classification today in the absence of such compelling governmental reasons." They continue:

> The plaintiffs here cannot present any reason, let alone a compelling reason, that can now be imputed to Congress to justify the protection of the contracts of Jews in general, of Chassidic Jews in particular, under § 1981. The past history of anti-Semitism has little relevance to the current socioeconomic position of Jews in the United States [and here defendants cite studies describing the prominence of Jews in America today]; Jews are consequently not regarded as a disadvantaged minority in other federal legislation protective of such minorities. (Def.Mem. in Supp. of Mot. to Dismiss Am. Compl. at 17–18.) While defendant can try and make this argument to the Second Circuit, it is clear to this Court that defendant has wrongly confused Section 1981's mandate against discrimination with the statutes at issue in *Adarand* and similar cases, which prohibit race-based preferences in hiring or contracting. I do not find that this comparison provides any legitimate grounds on which to dismiss plaintiffs' discrimination claim.

compared to similar insurance policies and policyholders services by La Suisse during the same time period:

*failing and refusing to pay benefits due under the terms and conditions of the above described insurance policies; failing to recognize policy reinstatement provisions as to the plaintiffs;* failing to timely and properly notify plaintiffs of lapses under the terms and conditions of the policies; failing and refusing to accept payment to remedy or cure such lapses under the policies; wrongly and *intentionally procuring lapses under the terms and conditions of the policies;* failing to pay interest due on all benefits under the policies; failing to pay the exchange rate differential between Swiss francs and American dollars lost by virtue of failing to pay under the policies; failing to pay pro-rata refunds of premiums paid by plaintiffs under the policies; and failing to authorize loans against the policy cash values, or restricting such loan availability; and failing to correspond or communicate with policyholders, beneficiaries, or agents of the foregoing, with respect to loans, interest, rights or benefits payable under the policies.

(See Amended Compl. at ¶ 158–165.) (language also contained in the original complaint emphasized) They seek damages and declaratory, injunctive, and equitable relief.

■ In the Second Circuit, civil rights complaints are to be construed liberally. *See Mian,* 7 F.3d at 1087 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1162–63, 122 L.Ed.2d 517 (1993)). "When discriminatory intent is in question, courts are cautious of summary adjudication." *Hicks v. IBM,* 44 F.Supp.2d 593, 598 (S.D.N.Y.1999) (citing *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997)). As further noted in *Hicks,* "the real question is whether the complaint alleges facts sufficient to raise an inference of racial motivation." *Id.* at 593 (citing *Williams v. Greendolf, Inc.,* 735 F.Supp. 137, 139 (S.D.N.Y.1990)).

Plaintiffs' amended complaint now alleges facts sufficient to raise an inference of racial motivation. They allege a causal connection between the plaintiffs' race and the actions taken by LaSuisse officials. If, after discovery, it appears that La Suisse acted for economic rather than racial reasons, defendant will prevail. But I am satisfied that plaintiffs have cured the defect in their pleading.

Defendant's motion to dismiss the second count of plaintiffs' claim is denied.

*Motion to strike*

■ In my prior decision, I stated clearly that plaintiffs would be bound by their representation to Judge Fox and to me that defendant eventually paid the face amount of the matured policies. I noted that this left the Court with only a claim for interest due to the allegedly late payment (unless the discrimination claim was successfully repled). Defendant now moves to strike any and all allegations of non-payment from the amended complaint under Fed.R.Civ.P. 12(f).

■ Rule 12(f) states in pertinent part that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." A motion to strike is appropriate when "no evidence in support of the allegation would be admissible." *Lipsky v. Com. United Corp.,* 551 F.2d 887, 893 (2d Cir.1976) (affirming order striking portions of complaint); *accord Barcher v. New York University School of Law,* 993 F.Supp. 177, 181 (S.D.N.Y.1998). Applying Rule 12(f), this Court will strike a pleading " 'when it appears beyond peradventure that it is a sham and false and that its allegation are devoid of factual basis.' " *Salzmann v. Prudential Securities Inc.,* 1994 WL 191855, at * 13 (S.D.N.Y. May 16, 1994) (citations omitted).

Based on the admission of plaintiffs' counsel, there is no dispute as to whether or not plaintiffs were eventually paid the face-value of the claims. Thus, we are obviously not going to try this issue. We

are, however, going to trial on any of plaintiffs' remaining claims for damages (essentially interest). In addition, the allegation that defendant stalled before paying plaintiffs is relevant to the discrimination claim. In that regard, the allegations of non-payment are not "redundant, immaterial, impertinent or scandalous." Defendant's motion is denied for this reason.

## CONCLUSION

For the reason above, defendant's motion to dismiss plaintiffs' Second Cause of Action in the Amended Complaint is dismissed. As a result, plaintiffs' motion to convert defendant's motion to a motion for summary judgment is denied. Defendant's motion to strike is denied.

Discovery in this case is currently proceeding under a renewed scheduling order, under the supervision of the Hon. Mark D. Fox, United States Magistrate Judge, and is to be completed on or before May 17, 2001.

This constitutes the order and decision of the Court